IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILLIP HETHERINGTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-07-2104 |
| | § | |
| ALLIED INTERNATIONAL CREDIT | § | |
| CORP., et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Defendant's Motion for Summary Judgment (Docket Entry No. 56) and Plaintiff's Cross-Motion for Partial Summary Judgment (Docket Entry No. 59). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **DENIES** both motions.

**I. Case Background**

Phillip Hetherington ("Plaintiff") filed this suit against Allied International Credit Corporation ("Defendant") for, inter alia, violations of the Fair Debt Collection Practices Act ("FDCPA"), the Texas Debt Collection Act ("TDCA"), and the Texas Deceptive Trade Practices Act.[2] Plaintiff is an individual

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry Nos. 30, 31.

[2] Plaintiff's Second Amended Complaint, Docket Entry No. 27, p. 6-10.

residing in Sugar Land, Texas.[3]  Defendant is a Delaware corporation registered and doing business in Texas.[4]

On January 2, 2003, Plaintiff opened a sole proprietorship bank account with Bank of Texas, NA[5] ("BOT Account") under the name: "Phillip M. Hetherington d/b/a Deep Blue Scuba."[6]  Deep Blue Scuba is the name of the scuba diving instruction business that Plaintiff ran out of his home from January to April of 2003.[7]  Plaintiff used the BOT Account for business expenses and lesson payments, as well as personal transactions such as gas, groceries, and dinner with his wife.[8]

On March 7, 2003, Plaintiff wrote a check for $650.00 from a joint checking account he shared with his wife at the Brazos Valley Schools Credit Union ("Brazos Account") to cover a check for $606.88 that he was writing out of the BOT Account to Sterling McCall Lexus for car repairs.[9]  However, Plaintiff did not have

---

[3] Id. at 1.

[4] Id.

[5] Bank of Texas, NA is a subsidiary of Bank of Oklahoma Financial Corporation, LLC, a multi-bank holding company. Id. at 3; Answer and Cross-Claim of Defendant Bank of Texas, Docket Entry No. 41, p. 2.  Bank of Oklahoma, NA is also a subsidiary of Bank of Oklahoma Financial Corporation.  Plaintiff's Second Amended Complaint, Docket Entry No. 27, p. 3; Answer and Cross-Claim of Defendant Bank of Texas, Docket Entry No. 28, p. 2.

[6] Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 58, Ex. A, Affidavit of Phillip Hetherington ("Plaintiff's Affidavit"), p. 2.

[7] Id. at 1.

[8] Id. at 2.

[9] Id.

2

sufficient funds in the Brazos Account and the Brazos credit union returned the check for $650.00 to Bank of Texas on March 11, 2003.[10] By that time, Bank of Texas had already paid the $606.88 check to Sterling McCall Lexus.[11] The returned check from the Brazos Account left Plaintiff's BOT Account with a negative balance of $637.18.[12] The BOT account was closed on April 15, 2003, with a negative final balance of $692.18.[13]

Plaintiff alleges that Bank of Oklahoma Financial Corporation, the holding company of Bank of Texas, assigned the "debt" at issue to Defendant for collection.[14] Plaintiff's BOT Account was subsequently sold to Rolling Thunder Funding, LLC and assigned to Northstar Location Services, LLC, a collection agency.[15]

As a result of the various representations and events that took place during the collection process, Plaintiff filed this action against Defendant, Bank of Oklahoma, NA, Rolling Thunder Funding, LLC, and Northstar Location Services, LLC on June 28, 2007.[16] In an agreed interlocutory declaratory judgment issued by the court on August 6, 2007, Rolling Thunder Funding and Northstar

---

[10]   Id. at 3.

[11]   Id.

[12]   Id.

[13]   Id. at 2.

[14]   Plaintiff's Second Amended Complaint, Docket Entry No. 27, p. 3.

[15]   Id. at 4.

[16]   Plaintiff's Original Complaint, Docket Entry No. 1.

Location Services were terminated from this lawsuit.[17] Plaintiff added Bank of Texas, NA, and Bank of Oklahoma Financial Corporation as defendants in his second amended complaint dated October 16, 2007.[18] Plaintiff later filed a stipulation of dismissal without prejudice of Bank of Oklahoma Financial Corporation, which was granted by order of the court on December 10, 2007.[19] In an agreed interlocutory declaratory judgment issued by the court on January 17, 2008, Bank of Texas and Bank of Oklahoma were also terminated.[20] Defendant Allied International Credit Corporation is the only defendant remaining in this lawsuit. Defendant filed the pending motion for summary judgment on January 17, 2008. Plaintiff responded and filed a cross-motion for partial summary judgment.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston</u>, 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. <u>Anderson</u>

---

[17]   Agreed Interlocutory Declaratory Judgment, Docket Entry No. 6.

[18]   Plaintiff's Second Amended Complaint, Docket Entry No. 27.

[19]   Stipulation of Dismissal, Docket Entry No. 43; Order of Dismissal, Docket Entry No. 44.

[20]   Agreed Interlocutory Declaratory Judgment, Docket Entry No. 55.

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  Anderson, 477 U.S. at 250; TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  Celotex Corp., 477 U.S. at 322.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

The nonmoving party must show more than "some metaphysical doubt as to the material facts." Meinecke v. H & R Block, 66 F.3d 77, 81 (5th Cir. 1995). Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden. Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

### III.  Analysis

The FDCPA was designed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e; see also McKenzie v. E.A. Uffman & Assocs., 119 F.3d 358, 360 (5th Cir. 1997); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1234 (5th Cir. 1997). The FDCPA prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. 1692e; see also McKenzie, 119 F.3d at 360; Taylor, 103 F.3d at 1234.

>Under the FDCPA, the term "debt" means:
>
>[A]ny obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5). The Texas Financial Code defines "consumer debt" as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code. Ann. § 392.001(2).

Neither party remaining in this suit disputes that the provisions of the FDCPA and TDCA at issue cover consumer, not commercial or business, debts. However, the parties do dispute: (1) whether the obligation (or "debt") at issue is properly characterized as consumer or commercial; and (2) what the court should consider in determining whether said debt is consumer or commercial.

Defendant asserts that summary judgment is appropriate in its favor because the Plaintiff's BOT Account is a commercial account and does not fall under the protection of the FDCPA or TDCA. Defendant asserts that transactions from the BOT Account were made on behalf of Plaintiff's scuba business and that, even if Plaintiff used the account for occasional non-business purchases, such use does not transform the account into one for non-commercial purposes.

Where Defendant's arguments focus on characterizing the <u>BOT Account</u>, Plaintiff focuses on the nature of the <u>bounced check</u> written to Sterling McCall Lexus.  Plaintiff asserts that his obligation arose from a check for personal car repairs, which is a consumer transaction and falls under the FDCPA and TDCA.  Even if the court determines that the debt is not a consumer debt as a matter of law, Plaintiff maintains that there is a genuine issue of material fact regarding whether the debt was incurred primarily for personal, family, or household purposes.

Plaintiff contends that his obligation arose from a check written for car repairs; however, this case is not one involving a car dealer's collection on a bounced check.  The car dealership has been paid out of the BOT Account.  The debt at issue has nothing to do with car repairs.  This is a case involving a bank attempting to collect funds owed to it through one of its accounts.  Plaintiff's obligation arose from insufficient funds in his Brazos and BOT accounts.  The court agrees with Defendant that it must look to the nature of Plaintiff's BOT Account in order to determine whether Plaintiff's obligation falls under the FDCPA and TDCA.

The court looks first to the language of the statutes at issue.  See <u>Hughey v. United States</u>, 495 U.S. 411, 415 (1990); <u>Hamilton v. United Healthcare of Louisiana</u>, 310 F.3d 385, 391 (5th Cir. 2002). Both the FDCPA and TDCA define "debt" as an obligation of a consumer arising from a transaction which is "<u>primarily</u> for

personal, family, or household purposes." 15 U.S.C. § 1692a(5); Tex. Fin. Code. Ann. § 392.001(2) (emphasis added). In order to determine whether a transaction is primarily consumer or commercial in nature, the court must examine the transaction as a whole. See Riviere v. Banner Chevrolet, Inc., 184 F.3d 457, 462 (5th Cir. 1999). Beyond this, the court is given no further guidance from the Fifth Circuit as to what constitutes a bank account that is primarily consumer in nature, or what factors should be considered in making such a determination under the FDCPA or TDCA.

Defendant presents evidence that the BOT Account was opened as a business account under the name "Phillip M. Hetherington d/b/a Deep Blue Scuba" and that Plaintiff used the account for business expenses and lesson payments.[21] Plaintiff agrees that the account was used to deposit checks from Deep Blue Scuba, but also points the court to bank records and testimony that there were a significant number of transactions from the BOT Account for expenses such as gas, groceries, meals with his wife, and other personal items.[22] Plaintiff asserts that he used the account primarily as a "convenient personal account."[23]

Defendant cites to a case from the Seventh Circuit and argues that the fact that Plaintiff may have used the BOT Account for non-

---

[21] Id. at Ex. A, p. 1, 6, 23, 25, 31, 40; accord Plaintiff's Affidavit, p. 2.

[22] Plaintiff's Affidavit, p. 2.

[23] Id.

9

business purposes on occasion does not transform the purpose of the account into a non-commercial one.  See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, LLC, 214 F.3d 872, 875 (7th Cir. 2000).  Defendant further asserts that "whether a debt has been incurred for personal or commercial purposes is determined by its initiation, rather than when it is collected."[24]  See id.  In this case, however, Plaintiff presents evidence that the BOT Account was used for personal purposes on more than just an occasional basis.[25]  Plaintiff testified that, despite opening the BOT Account in his name and the name of his scuba business, the primary purpose of the account was for personal convenience.[26]

The court finds that fact issues remain which preclude summary judgment in favor of either party.  The parties dispute the primary purpose of the BOT Account and offer significant evidence in support of their arguments.  It is material whether Plaintiff's debt is of a consumer or commercial nature because said characterization determines whether the debt falls under the FDCPA or TDCA.  The characterization must be made by a jury.

### IV. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is **DENIED** and Plaintiff's Cross-Motion for Partial Summary

---

[24] Defendant's Motion for Summary Judgment, Docket Entry No. 56, p. 6.

[25] Plaintiff's Affidavit, p. 2.

[26] Id.

Judgment is **DENIED.**

**SIGNED** in Houston, Texas, this 21st day of July, 2008.

Nancy K. Johnson
United States Magistrate Judge